Next case for argument, Greene v. Education, Department of Education, yeah, go ahead. Good morning, your honors. It pleases the court, I'm Frederick Greene. I am the plaintiff in the case. This case is actually a pretty simple case. It's about justice. It's about fairness. It's about whether or not the lady of justice is really blind, or whether or not there are different rules for different parties to a case. In this case, there was an original action filed in 2005, and the 2005 case was ultimately an adversarial complaint that was removed, or withdrawal of reference was made where it actually ended up in district court. That withdrawal of reference took place because there were a number of claims that were outside of the bankruptcy court's purview. There was a statute of limitations claim, there was a negligence claim, there was a tort claim, there was a breach of contract claim, and there were claims for reparations. So, the bankruptcy court advised that reference be withdrawn so that all those matters could be handled in one case. That case made it to the district court and was tried. Ultimately, the case was dismissed on summary disposition, found its way here to the Seventh Circuit. The Seventh Circuit upheld that dismissal. Now, in that case, there was an opportunity, there were numerous opportunities, repeated opportunities, for the Department of Education to file a counterclaim. As a matter of fact, if you take a look at the 2006 or 2005 Statement of Undisputed Facts and compare them to the 2010 Statement of Undisputed Facts, the exact same facts were at play, the exact same things were alleged, the exact same things were claimed, and everything that was necessary for a judgment to be entered was present in the 2005 case. There's only one thing that was needed, and that is for a prayer for relief. That's it. It's the only thing that was missing. All the government had to do was to simply say, we ask for a judgment in the amount of blank, and that's it. Everything else was proven, and the amazing thing about the facts that were proven, and this is where it gets into the argument that I mentioned about... The Department of Education filed in 2010 was identical to pleadings that the Department had made earlier? What I'm saying, Your Honor, I'm sorry? Are you saying that the Department's 2010 counterclaim is identical to earlier pleading that it had made? What I'm saying, Your Honor, is that the 2010 counterclaim is predicated on facts that were proven. That is not my question. My question is whether it's identical to the Department's earlier filing. There was no counterclaim in the earlier case. The essence is that the facts were identical. In defending against your earlier claim, the Department must have filed something. They did, Your Honor. Is what they filed identical to this 2010 counterclaim? No. What they filed is an answer, and in that answer, they actually admit that there are sums that are owed. They deny the amounts. In other words, they actually put into controversy the issue of what amounts were owed in their answer. At that point in time, they voluntarily decided that we're not going to file a counterclaim. Subsequently, in that case, all the facts necessary to prove the counterclaim were brought into evidence, proven, and they were actually proven in large part by action of the government. The government sent requests for admissions that ultimately, without getting into the details, were not timely responded to, and the government insisted that those requests for admissions admitted every fact in the requests for admissions as the rule states. And so those requests for admissions, if you look at the requests for admissions, every single fact necessary for the judgment to be entered was present in the 2005 case. It was proven in the 2005 case. There's absolutely nothing new that happened in 2010 other than a prayer for relief. Well, nothing in that adversary proceeding turned on the validity or amount of the debt. The question was whether it was dischargeable, and the claim, I mean, it was presumptively non-dischargeable by statute, and the question was whether it should be discharged based on undue hardship and these other arguments about reparations, et cetera. And that was the thrust of the adversary proceeding, but the basic validity and amount of the debt was not at issue. That was presumed. That's partially correct, Your Honor. It was not at issue in the discharge matter, but it was at issue. It wasn't at issue in the adversary proceeding either, because the adversary proceeding was about whether there were grounds based on undue hardship or other reasons to discharge the debt contrary to the statute which says student loan debts are not dischargeable. That is correct for that one element. The element of dischargeability, the amount was not in question. Well, that was the only point of the adversary proceeding. It wasn't. That's the point. It wasn't the only. There was a statute of limitations claim. There was a negligence and a tort claim. Those were all lodged as arguments for dischargeability, right? They were not affirmative defenses to an action to collect the debt. Well, actually, affirmative defenses were argued too. If you remember, what actually happened was that there were affirmative defenses alleged that ultimately were denied because there had not been a counterclaim, and so there was an attempt made to actually utilize affirmative defenses. But the claims that were filed, it was not just a dischargeability claim. If it were just a dischargeability claim, there would have been no reason to withdraw reference. If all that we were talking about is a dischargeability claim, the bankruptcy court had full authority to hear all of that. The reason why there was a withdrawal of reference was because, in fact, there were claims that were outside the purview of the bankruptcy court, and thereby, for all those claims to be settled together, the district court withdrew reference so that it could hear the broader claims. And so to that extent, no, there was also a negligence claim. The negligence claim actually was construed as sounding in tort, but in reality it was a breach of contract claim, negligently maintaining the student loans or negligently handling the account. So it was either a tort claim, contract claim, however you construe it, but it was certainly outside of dischargeability. And then there were the reparations claims as well as the statute of limitations claim. So to that extent, I mean, the case was far more extensive. And I mean, the rule makes it clear that if you have an opportunity to, I mean, if in fact the same issues are at play, which exactly the same issues were at play, I mean, the proofs were exactly the same. There was nothing different that ever occurred in the second action from the first action. If you look at the file from 2005 to 2010, the exact same issues were proven. The exact same facts were at play. There was a compulsory requirement that the counterclaim be brought in the earlier action, and there was a conscious decision made not to do so that the government did. But, you know, that doesn't take them out of the compulsory counterclaim simply because they choose not to bring it. Do you want to reserve the rest of your time? I will, Your Honor. That's okay. Okay. Thank you. Thank you, Mr. Green. Mr. Moorlach? Thank you, Your Honor. The Maine Police Court. I'm Robin Moorlach. I'm an assistant United States attorney. In the Northern District of Indiana, and I represent the Appalachian. The government believes there's two issues before the court. Whether or not its counterclaim in the present litigation was, in fact, a compulsory counterclaim in Mr. Green's student loan discharge adversary filed in 2005. And second, does the doctrine of res judicata or collateral stop a bar? The government's counterclaim in this case. Mr. Green argues that... When you were opposing discharge in the bankruptcy proceeding, could you have asked for him to, you know, repay the debt? If your question is could I have filed a counterclaim, I believe I could have. If you're asking... As a creditor, you mean. So you're a creditor filing a claim in bankruptcy. Yes. Why didn't you? Your Honor, I've been doing bankruptcy for 20 or so years, and I've never filed a counterclaim in this type of situation. Really? What's the reason? Because within the bankruptcy framework, well, let's strike that. I haven't done it, quite frankly, because I've never even thought about the issue that's raised in this case. But more importantly, when we do look at the issue, the goal of Federal Rule of Civil Procedure 13A, compulsory counterclaim, is judicial economy. Me filing a counterclaim in this suit does nothing to advance that. Suddenly the bankruptcy court has to make that determination. And not only would it be true in this case, Judge, but it would be true in every single bankruptcy adversary seeking discharge. For instance... Wait, I've lost you. Since you're in the bankruptcy, when you were in the bankruptcy proceeding, you could have, as you say, filed a creditor's claim. Why wouldn't that be a simpler way to proceed than to file a separate lawsuit years later? I'm sorry, Your Honor. I think I misunderstood your original question. This was a no-asset Chapter 7. The record will show. Does the court understand what the bankruptcy term no-asset means? Okay. So you couldn't have gotten anything. I couldn't have gotten anything. And so you wait until he has assets or income years later. The Department of Education has an ability to collect its own loans through administrative wage garnishment, which was part of this case. So I could wait and allow them to do that administratively rather than do it via the government. Going back to my point earlier, Your Honor, if this court rules in favor of Mr. Green and says that when a debtor files a discharge adversary, a claim for judgment must be filed as compulsory counterclaim, assuming one hasn't been filed, would have a major impact in bankruptcy. Suddenly, for instance, Joe Debtor has a traffic accident that may have been caused by drunk driving. He files bankruptcy shortly after that. He files an adversary saying, I believe these debts are dischargeable. Drunk driving is a grounds for non-dischargeability of a debt under the code. The victim would not only have to come into court and oppose the discharge, but if establishing the debt is a compulsory counterclaim, it would have to file that suit. And the bankruptcy court, actually I think under Section 157 of Title 28, it would likely get kicked up to the district court, but one of the two courts would have to decide it. It would undercut the claims procedure that Your Honor is referencing. There would have to be a decision on this. That would be true with willful and malicious injuries. That would be true with fraud. That would be true with state law. If the state issued student loans without any federal guarantees, the state would be dragged in. All of these would be dragged in front of the bankruptcy court. Now, he was denied his discharge of this debt, but was he allowed to discharge his other... I mean, how did the bankruptcy proceeding end? The bankruptcy proceeding ended with a discharge being entered for Mr. Green and this debt to the United States Department of Education being declared non-dischargeable. So the rest of his debts were discharged? Yes, sir. Because he has no assets? They were discharged. I wouldn't correlate the no asset with the discharge, but yes. Okay, thank you. Mr. Green seems to argue that because there was an opportunity to file a counterclaim in the bankruptcy court or the district where one's reference was withdrawn, that we had to file it. He doesn't address the underlying issue of whether it was a compulsory counterclaim, which in our brief we have discussed. With regard to the second issue, Mr. Green is arguing race judicata bars the government's counterclaim along with collateral estoppel in the 2010 case. The problem with his argument is that both require a judgment in the prior case, and as this court found in its prior opinion, the government didn't raise a counterclaim, there was no judgment on the debt for the government in the 2005 case, therefore there can be no race judicata or collateral estoppel. Unless the court has further questions, thank you. Okay, thank you very much, Mr. Moorlach. Mr. Green? A couple of things I'd like to address, Your Honors, if I could. Counsel indicates that if, in fact, this counterclaim, compulsory counterclaim, had it been filed, that would have required everybody in a bankruptcy case to have to file counterclaims that are unrelated. Those are not the facts here. This case, there was a withdrawal of reference where the case was actually specifically sent to district court so that all the claims between the parties could be resolved. That's what the bankruptcy court judge ordered, and that's what actually happened. So there was a venue in place. This was not just a bankruptcy case. This was a case tried in district court so that there would not be multiple files, and that's what the order of removal indicates, and that's what the reference or the order of reference indicates. Counsel does not point out the real reason why they, in fact, did not bring a counterclaim. But if we take a look at their brief, which was filed in this very court in the earlier case, in the 06 case, indicates that affirmative offenses are provided by the Federal Rules of Civil Procedure. The rule states in a pleading to a preceding pleading. In this case, the complaint filed by Greens is not a pleading in response to a prior pleading. It is the initial pleading. Last, because the government has chosen not to pursue a monetary judgment from the Greens in this case, the claims outlined in counts 2 and 3 of complaint are not ripe. This court has said the ripeness doctrine is based on the central perception that courts should not render decisions absent a genuine need to resolve a real dispute. It goes on to say, in this case, because the government has not counterclaimed against the Greens, their arguments to seek to limit their student loan debt are hypothetical and speculative. Now, what are they saying there? Oh, wait a second. Your time has expired, Mr. Green. Could I address... Very briefly. What they're really dealing with is the fact that the central argument I made was that when Congress amended the statute to eliminate the statute of limitations for student loans, I made the claim that if you eliminate the statute for the government to collect student loans, you also eliminate the statute of limitations for any affirmative defenses that I have, such as reparations, such as discrimination, such as prior acts of the Department of Education. And to avoid having to deal with the issue of elimination of my affirmative defenses, they simply chose not to counterclaim. It was their choice, but the rule says that they had to counterclaim. That's what Rule 13a clearly indicates. Thank you, Your Honor. Okay, thanks, Mr. Green and Mr. Monlaw.